SNEATH GLASS CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14285.   Promulgated December 13, 1928.

*Lawrence A. Baker, Esq.*, for the petitioner.
*J. E. Marshall, Esq.*, for the respondent.

706

MILLIKEN: The issues involved in this proceeding were involved in the former proceeding. See 1 B. T. A. 736. The record, with two exceptions which we will hereafter discuss, is the same.

The first issue is whether respondent erred in refusing to include the value of the patents set forth in the findings of fact in petitioner's invested capital. With respect to this issue no new evidence was introduced. At the hearing of this proceeding, petitioner's counsel withdrew the contention that the value of these patents should be treated as paid-in surplus, in view of our decision in *Herald-Despatch Co.*, 4 B. T. A. 1096, and other cases. This leaves only the question whether the patents were paid in for capital stock.

There is nothing in the record which indicates that the additional stock issued on January 22, 1917, was issued for the patents. Crimmel, the patentee, received the same proportion of the stock that was issued to the other stockholders, each of whom received the new stock in proportion to his then holdings in the petitioner corporation. Besides, the consideration to be paid for the stock was specifically set forth in the contract of assignment. Crimmel was to receive such a sum for the use of the patents as the directors might " determine to be fair and equitable therefor, based upon the volume of sales of each and all of said articles made, manufactured and sold by it, taking into consideration the cost of production, manufacturing and marketing same, and the profit to said company therefrom; and it is further understood and agreed that should the said Sneath Glass Company sell or assign the right to make or manufacture any or all of said articles to any other persons, firms or corporations, or transfer, sell or dispose of said Letters Patent, then and in that event the said Sneath Glass Company hereby agrees to pay to the said Alvie C. Crimmel, such reasonable sums, as may be determined upon by the Board of Directors of the Sneath Glass Company, based upon the amount received by it therefor."

This contract negatives the theory that the patents were paid in for the new stock. We see no reason why our former decision on this point should now be overruled and we again find that the value of the patents should not be included in petitioner's invested capital.

At the hearing of this proceeding, petitioner introduced testimony to the effect that it had never manufactured articles from tin or wood and we have found such to be a fact. The only other evidence introduced at said hearing was that of Crimmel with respect to the amounts paid him by petitioner under the contract of assignment. The material part of his testimony is as follows:

Q. That agreement is dated the 22nd of January, 1917; did the Board of Directors of the Company in 1917 grant you any additional compensation under this agreement?

A. Yes.

Q. In what amount?

A. I do not remember whether it was five or ten thousand, five, I think.

Q. Can you refresh your recollection from anything that you have with you that would enable you to say definitely?

A. I may have papers there that would give that correct amount.

Mr. Baker: Well, if your Honor please, I will let the record stand, because I believe it is immaterial whether it was five or ten, and I ask you, Mr. Crimmel, whether in 1918 the Board of Directors paid you anything under the agreement?

A. Yes.

By Mr. Baker:

Q. Authorized the payment?

A. Yes.

Q. Do you recall about that; what the amount was?

708

A. Five thousand dollars; I think it was over five—either five or ten; some years they paid ten and some five, mostly five.

Mr. Baker: That is all, Mr. Crimmel.

We are requested to find that the patents had a value when assigned of $200,000, for the reason that on the date of the assignment additional stock of that face value was issued. We have just held that the patents were not paid in for the stock and for this reason, we can not perceive any relation between the issuance of the stock and the assignment of the patents. We can not indulge in the double presumption that the par value of the stock establishes the value of the patents and that the value of the patents establishes the value of the stock. Although respondent has found in the matter of an estate tax that 96 shares of petitioner's capital stock were worth par, he has made a different determination in this proceeding. While the former determination is evidential, it is not of sufficient weight to overcome the burden which rests on petitioner to overcome respondent's findings in the deficiency letter upon which this proceeding is based and this it must accomplish by a preponderance of the evidence. Turning to the record we find an entire absence of evidence as to the value of petitioner's tangibles. We find no testimony relative to the value of the patents when assigned or at any other time. We find no action by petitioner's board of directors which places any value upon the patents. Petitioner points out that its net income for the year 1916, the year in which the patented articles were probably first manufactured and sold to any material extent, was nearly double what it was for the preceding year, and that approximately half of its sales for the latter year were of patented articles, but it is equally apparent that petitioner's net income increased from $21,038.22 for 1911 to $57,993.35 for 1915. We are not informed as to what occurred in these four years which resulted in almost a triplication of petitioner's income. Some of the same elements which produced the increase during the four preceding years may have materially contributed to the large net income received in 1916.

Another vital element which is quite uncertain is what petitioner in fact paid or in the future will pay to Crimmel under the contract of assignment. Almost three years elapsed between the hearing of Docket No. 346 and the hearing of this proceeding, and petitioner was put on its guard by our former findings of fact and the conclusions we drew therefrom. Nevertheless, when Crimmel was asked what was paid him by petitioner for the use of his patent for the years 1917 and 1918, his guess varied from $5,000 to double that sum. There is no reason why this witness might not have testified to the exact amount which he received. Besides, petitioner is obli-

gated under the contract of assignment in the event of the sale by petitioner of the patents, to pay Crimmel "such reasonable sums as may be determined by the Board of Directors of the Sneath Glass Company, based upon the amount received by it therefor." The question we have before us is the value of these patents to petitioner, which of course is the value of the patents, less payments made for their use and payments to be made from the sale price. While we are of opinion that these patents had real value, yet under all the facts, as shown by the record in this and in the former proceeding, any attempt to fix the value of the patents would be a mere guess. We are unable to say that respondent erred in refusing to allow any deduction for the exhaustion of these patents.

Under the order heretofore referred to, this proceeding will be restored to the Day Calendar for the purpose of determining whether petitioner is entitled to a computation of its tax under sections 327 and 328 of the Revenue Act of 1918.